IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID LAMONT MORGAN | § | |
| VS. | § | CIVIL ACTION NO. 4:14cv151 |
| DENISON POLICE DEPT., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff David Lamont Morgan, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the Denison Police Department, Officer Adron Douglas and Mayor Jared Johnson. The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #49), Morgan's responses (docket entry nos. 54 and 56) and the Defendants' reply (docket entry #55).

### Morgan's Claims

The original complaint was filed on March 17, 2014. Morgan alleges that he was the victim of excessive use of force on July 6, 2012. More specifically, Officer Douglas purportedly picked him up and slammed him down on a concrete sidewalk, grabbed his hair, and slammed his face into the sidewalk. He attached medical records from the Texoma Medical Center, dated July 6, 2012, which lists his injuries, including a fractured finger. As a result of the incident, Morgan was charged with interference with public duties and resisting arrest, search or transport, but the charges were dismissed.

Morgan is suing Officer Douglas for excessive use of force. He is suing the Denison Police Department because it is responsible for its officers, including Officer Douglas. He stated that he is

1

suing Mayor Jared Johnson because he is head chief of the City of Denison. He noted that he called Mayor Johnson's office seven times and never received a call back from him.

## Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #49) on October 8, 2014. They assert that Morgan has failed to state a claim against Mayor Johnson, that they are entitled to summary judgment with respect to Morgan's § 1983 claims, and that they are likewise entitled to summary judgment with respect to Morgan's pendant state tort claims. In support of their motion, they attached declarations from Officer Douglas, Officer Greg Brown, Mayor Johnson and Captain Albert Rodriguez. They also attached a copy of the offense report from the incident and a report prepared by Captain Rodriguez.

The Defendants provided their own account of the events that transpired on July 6, 2012. According to the Defendants, the incident began when Officer Douglas responded to a call regarding a disturbance. Upon his arrival, Officer Douglas made contact with Charles Washington. Washington notified Officer Douglas about a disturbance between himself and his step-daughter, Joanndrea Keeton. Washington stated that Keeton yelled and cursed at him while he was loading his car and struck him. Washington responded by grabbing Keaton and holding her on the ground to prevent her from hitting him.

Keeton agreed that she and Washington had an argument and that he pulled her to the ground. She admitted to hitting Washington. Although Keeton said she was okay, Officer Douglas noticed that she was acting panicky and called from Denison EMS to make sure she was okay.

While Officer Douglas was conducting an investigation, Morgan walked up to the scene and started asking what was going on. Officer Douglas told Morgan that if he was not involved, he needed to leave. Morgan stated that his niece was involved and that he was staying. Officer Douglas, in turn,

2

told Morgan that he needed to leave and that he would be arrested for interfering with a police investigation if he did not leave. Morgan took a step towards Officer Douglas, said he was not leaving and to call for back up if he wanted to do so. Officer Douglas then told Morgan that he was under arrest for interfering with an investigation. Officer Douglas reached for Morgan's right arm, but he pulled away. Officer Douglas was able to get behind Morgan in an attempt to place handcuffs on him, but Morgan resisted his efforts. A second Denison police officer, Greg Brown, was across the street speaking to Washington. Officer Douglas called out to Officer Brown for assistance. Because of Morgan's size compared to Officer Douglas and in order to gain control of Morgan, Officer Douglas placed Morgan on the ground.

Officer Brown ran over to Officer Douglas in order to assist him place Morgan into custody. Officer Brown attempted to pull Morgan's arms behind his back, but Morgan pulled away twice. Officer Brown advised Morgan that if he did not quit resisting, then he would be tased. Officer Douglas was then able to get Morgan into handcuffs. At that point, Morgan told Officer Douglas that he was going to sue him. Officers Douglas and Brown pulled Morgan into a sitting position. Officer Douglas then stepped away. Officer Brown helped Morgan to his feet and escorted Morgan towards his patrol unit. This, in turn, enabled Officer Douglas to continue with his investigation. Officer Douglas told Officer Brown that he just needed Morgan out of the way so he could finish his investigation and that Morgan would be free to go once he finished his investigation.

Officer Brown noticed a laceration on Morgan's finger and asked the paramedics to look at it. Morgan was advised that he needed stitches. Officer Brown stated in his affidavit that Morgan's injuries were due to the struggle and Morgan's resisting arrest. Officer Brown stated that Officer Douglas advised him that Morgan was free to go and that he was not under arrest. Morgan was transported to Texoma Medical Center where he was treated and released. Officer Brown further

stated that he took three or four pictures of Morgan's injuries, which consisted of a laceration to his middle finger and a scratch on his right knee. He advised Morgan that a report would be made and forwarded to the County Attorney's office for further investigation for charges of resisting arrest and interference with a police investigation.

The Defendants' legal arguments supporting their motion for summary judgment will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

## Morgan's Responses

Morgan filed two responses (docket entry nos. 54 and 56). He initially incorrectly asserted that the Defendants did not follow the Scheduling Order (docket entry #35). The Scheduling Order gave the parties a deadline of filing a motion for summary judgment based on the failure to exhaust administrative remedies. The Scheduling Order also gave the parties a deadline of October 8, 2014 to file motions for summary judgment on issues other than exhaustion of administrative remedies. The Defendants' motion for summary judgment was timely filed on the deadline. Morgan also complained about the Defendants' disclosures. He did not, however, address the facts as presented by the Defendants or their legal arguments.

## Defendants' Reply

The Defendants filed a reply (docket entry #55) on October 27, 2014. They correctly noted that their motion for summary judgment on issues other than exhaustion of administrative remedies was timely filed. They also responded to Morgan's complaint about an affidavit submitted by Albert Rodriguez because he had not been identified as a retained expert witness. They explained that they decided to use Rodriguez as an expert witness only after the deadline for initial disclosures. They added that the Court did not provide a deadline for the filing of expert disclosures, but they filed one out of an abundance of caution. The Defendants finished their reply by stressing that Morgan failed

to respond to their arguments in their motion for summary judgment and that he failed to present competent summary judgment evidence to rebut their arguments. Their arguments shall be fully addressed in the Discussion and Analysis section of this Memorandum Opinion.

<u>Discussion and Analysis</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to

establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

A. Claims against Mayor Jared Johnson

The Defendants began their arguments as to why they are entitled to summary judgment by focusing on the claims against Mayor Jared Johnson. They correctly observed that Morgan specified that he was suing Mayor Johnson because he is the "head Chief of the City of Denison and the Denison City Police Department" and that it is the Mayor's "responsibility to make sure his fellow officers to do their duty as an police off[icer] to protect and serve." The Defendants submitted an affidavit from Mayor Johnson, who noted that he is not the Chief of Police. He added that he is not the policy maker for the Denison Police Department. He has no authority to remove a police officer. The Defendants observed that it is unclear why Morgan has sued Mayor Johnson, but they also argued that it is clear that he has failed to state any cognizable claim against Mayor Johnson.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Mayor Johnson did not participate in the alleged wrong. He was sued because of his supervisory role, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court recently held that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.* For a city employee to be liable because he is a policy maker, "the employee must have *final* policymaking authority in that area." *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 (5th Cir. 1989) (emphasis in original). In the present case, Morgan sued Johnson just because he is the mayor, but the mere fact that Johnson is the mayor is not enough to hold him liable. Morgan has not provided any authority upon which to deny Mayor Johnson summary judgment; thus, the motion for summary judgment as to him should be granted.

B.  Section 1983 Claims

The Defendants observed that it is unclear whether Morgan has sued Officer Douglas in his official capacity, individual capacity, or both. They further observed that he has sued the City of Denison. The Supreme Court has stated, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). The Defendants thus correctly argued that Morgan's "official capacity" claims against Officer Douglas are really claims against the City of Denison. *Monell*, 436 U.S. at 690, n.55. They further correctly observed that the only defendant who is sued by the naming of a public official or an employee as a defendant in his official capacity is the entity itself. *Ashe v. Corley*, 992 F.2d 540, 541 n.1. (5th Cir. 1993).

The next related issue is whether Morgan has shown a basis for a lawsuit against the City of Denison. As was previously noted, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom,

7

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. *See also Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009).

In *Board of County Comm'rs of Bryan County v. Brown*, the Supreme Court observed that the line of cases starting with *Monell* require that a "plaintiff seeking to impose municipal liability under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." 520 U.S. 397, 403 (1997). The Supreme Court went on to discuss the concepts of a "policy" and "custom" as follows:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 403-04 (citations omitted). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. In cases where a "plaintiff is seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice." *Id.* at 406-407 (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 410. To satisfy the deliberate indifference prong, a plaintiff must ordinarily show a pattern of violations. *Estate of Davis ex re. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Where the policy itself is not unconstitutional, "considerably more proof than a single incident will be necessary in every case

to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

In the present case, Morgan has provided no evidence that a City policy, custom or practice was the moving force behind his alleged injuries or damages. He has not established liability on the part of the City of Denison; thus, the City is entitled to summary judgment as a matter of law.

The next area for the Court's consideration is Morgan's claims against Officer Douglas. The Fourth Amendment reasonableness standard applies with respect to allegations of excessive use of force during the arrest or seizure of a person. *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386 (1989). The Supreme Court has held that a court must determine "whether the totality of the circumstances justified [that] particular sort of search or seizure." *Garner*, 471 U.S. at 8-9. The balancing test "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. "The "reasonableness" must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In applying these standards, the Fifth Circuit has held that a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004) (citations omitted).

In the present case, Morgan complains that Officer Douglas picked him up, slammed him down on a concrete sidewalk, grabbed his hair and slammed his face down on the concrete sidewalk. Officer

9

Douglas, on the other hand, properly focused on all of the circumstances of the case. Officer Douglas was on location conducting an investigation of a reported disturbance between a step-father and daughter. He was conducting interviews when Morgan walked and started interfering in the investigation. Officer Douglas told Morgan that if he was not involved, he needed to leave. Morgan, however, would not leave. Officer Douglas again asked Morgan to leave and told him that if he did not do so, then he would be arrested for interfering with a police investigation. Morgan stepped towards Officer Douglas and stated that he was not leaving and Douglas could call for "back up." Officer Douglas then informed Morgan that he was under arrest for interfering with an investigation, and he reached for Morgan's right arm. Morgan pulled away. Officer Douglas was able to get behind Morgan and attempted to place handcuffs on him. Morgan, however, resisted. Officer Brown was across the street interviewing the step-father. Officer Douglas called out to him for assistance. It was noted that Officer Douglas was 5 feet 8 inches tall and weighed 135 pounds, while Morgan was over six feet tall and approximately 100 pounds heavier. Officer Douglas took Morgan to the ground in an effort to gain control over him. Officer Brown ran over and attempted to pull Morgan's arm behind his back but Morgan pulled away twice. Officer Brown advised Morgan that if he did not stop resisting arrest then he would be tased. Morgan cooperated only at that point in time. Officer Douglas was able to place handcuffs on him. Morgan then advised Officer Douglas that he was going to sue him. Morgan did not claim he was injured. It was not until Officer Brown walked Morgan to his patrol car that Officer Brown noticed a laceration on Morgan's finger and asked a paramedic to look at it. Morgan's injuries were documented, which consisted of a laceration to his middle finger and a scratch to his right knee. Morgan has submitted documentation showing he also sustained a fracture finger.

Several factors may be considered in evaluating the reasonableness of force, including: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The competent summary judgment evidence shows that Morgan interfered with an investigation. He defiantly ignored multiple orders to leave; thus, he was told that he was under arrest. Morgan then resisted efforts to arrest him. Officer Douglas thus sought the help of another officer and placed Morgan on the ground. Officer Douglas used a minimum amount of force in an effort to effectuate an arrest. Morgan became cooperative only after Officer Brown threatened to use a taser on him. A final factor to consider is Morgan's injuries, which were minor and unintentional. Morgan focuses on the fact that he received some injuries, but the fact that he was injured is just one factor that must be considered. Overall, the competent summary judgment evidence regarding all of the circumstances of this case shows that Officer Douglas did not subject Morgan to excessive use of force and the amount of force that was used was objectively reasonable. Officer Douglas is entitled to summary judgment.

In his relief section, Morgan lists a number of other claims without explanation. He argued that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. The Defendants correctly noted in their motion for summary judgment that the Fourth Amendment, as opposed to the Eighth Amendment, is the governing law. The Eighth Amendment does not apply since Morgan was not a prisoner. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). *See also Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993) (discussing when the Eighth Amendment applies and when the Fourth Amendment applies to excessive use of force claims).

Morgan also mentioned the Ninth Amendment, but the Ninth Amendment does not confer any specific constitutional right or guarantee. *See Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th

Cir. 1986). "The Ninth Amendment is a residual clause, which is intended to be used as a rule of construction in interpreting other constitutional rights. No cause of action exists based upon its violation." *Jennings v. Clay*, No. 2:13-CV-0015, 2013 WL 3388403, at *4 (N.D. Tex. July 8, 2013).

Morgan also claims his rights under the Tenth Amendment were violated. The Tenth Amendment deals with "powers not delegated to the United States, by the Constitution," and has no application to the present case. *See* U.S. Const. amend. X; *see also United States v. Parker*, 362 F.3d 1279, 1284 (10th Cir. 2004) ("[P]rivate plaintiffs do not have standing to bring Tenth Amendment claims when their interests are not aligned with the state's interests.").

Morgan next cites the Eleventh Amendment. The Defendants correctly noted that the Eleventh Amendment has no relevancy to the present case. "The Eleventh Amendment bars suits against a state for alleged deprivations of civil liberties." *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992). As such, the Defendants are entitled to summary judgment on this claim.

Morgan also cites the Twelfth Amendment. The Twelfth Amendment, however, outlines how the president and vice president are selected. It has nothing to do with the present case.

Morgan also cites the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment protects an individual after the individual has been arrested and is in detention awaiting trial. *Valencia v. Wiggins*, 981 F.2d at 1443-44. The Defendants argued that because Morgan alleges that he was subjected to excessive force at the time he was detained and not after he was arrested (in fact, he was not actually taken into custody), then his Fourteenth Amendment claim fails as a matter of law. Most recently, the Fifth Circuit reiterated that the Fourteenth Amendment protects pretrial detainees from excessive force, but claims arising during the initial arrest or apprehension of a free citizen are governed by the Fourth Amendment. *Dawson v. Anderson County, Tex.*, 769 F.3d 326,

328-29 (5th Cir. 2014). Morgan's excessive use of force claim arises under the Fourth Amendment, not the Fourteenth or Eighth Amendments.

Morgan also claims that he was the victim of slander. A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). Claims such as slander, libel and malicious prosecution are matters which the state protects by state law. *See Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir. 1988). The Fifth Circuit has emphasized that injury to a person's reputation alone does not give rise to § 1983 liability. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). Morgan's slander claim is a state law matter.

Morgan also claims that he was the victim of a false arrest. "There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause." *Brown v. Bryan County, OK.*, 67 F.3d 1174, 1180 (5th Cir. 1995) (citations omitted). "Whether officers have probable cause depends on whether, at the time of the arrest, the 'facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the arrested] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In the present case, Officer Douglas had probable cause to arrest Morgan for interfering with a police investigation. While Morgan was detained, Officer Douglas eventually decided not to arrest him. Nonetheless, he had probable cause for an arrest. Officer Douglas is entitled to summary judgment on this issue.

Defendant Douglas also argues that he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing discretionary

13

functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). Once asserted, the burden shifts to a plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cie. 2002); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). In determining if a defendant is entitled to qualified immunity, the court evaluates whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. at 201). The court may consider these two prongs in any order. *Id.* at 236.

When applying the second prong, the court examines whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (internal alterations and quotation marks omitted). The Fifth Circuit has observed that an official:

> does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

14

In the present case, the Court has already determined that Morgan has not shown a violation of his constitutional rights. Officer Douglas is thus entitled to summary judgment based on the first prong of the qualified immunity analysis. Moreover, Morgan has not addressed the second prong of the qualified immunity analysis. He has not shown that Officer Douglas' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014). Officer Douglas is entitled to summary judgment based on both prongs of the qualified immunity analysis.

Finally, Morgan included pendant state claims for assault, slander and intentional infliction of emotional distress. A district court may dismiss supplemental state law claims if all federal question claims that provided the court with original jurisdiction have been dismissed. *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992). Morgan's supplemental state claims should be dismissed. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #49) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**SIGNED this 6th day of February, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE